[No. 1935. Decided November 21, 1895.]

A. COHEN, *Respondent*, v. JAMES C. DRAKE, *Appellant.*

MISCONDUCT OF COUNSEL — REFERENCE IN ARGUMENT TO MATTERS NOT IN EVIDENCE.

Where counsel in argument to a jury exhibits paid checks of his client, which had not been introduced in evidence, and refers thereto for the purpose of refreshing his recollection as to dates and

amounts, it is error for the court to refuse a request for an instruction to the jury to disregard counsel's argument in regard to them.

Appeal from Superior Court, Pierce County — Hon. W. H. PRITCHARD, Judge. Reversed.

*Sharpstein & Blattner*, and *Cox, Cotton, Teal & Minor*, for appellant.

The opinion of the court was delivered by

DUNBAR, J.—One Louis Wallerstein was engaged in the wholesale and retail confectionary business in the city of Tacoma, and also dealt in cigars. Esberg, Bachman & Co., of Portland, Oregon, were creditors of the said Wallerstein, on the 26th of June, 1893, to the amount of $2,705. They brought their action to recover the same in the United States district court, and at the same time sued out a writ of attachment which was placed in the hands of the appellant, James C. Drake, who was United States marshal. In response to the writ the goods of Wallerstein — or the goods which it is contended by the appellant then belonged to Wallerstein — were attached by the marshal and sold, and the respondent here, A. Cohen, brought his action against the marshal for the value of the goods so attached and sold and for damages for their conversion. The appellant answered, setting up the attachment and sale under the order of the court and the fraudulent transfer by Wallerstein of the goods in question to respondent Cohen.

Cohen was brother-in-law of Wallerstein; was at the time of the alleged transfer of the goods to him by Wallerstein, living with Wallerstein as a member of the family; had been so living for a long time prior thereto, and continued so to live for some time after the transaction. He had been working in the capac-

ity of a clerk for Wallerstein, and testifies that Wallerstein was owing him a large amount of money, a small portion of which was for money loaned by him to Wallerstein, but the greater portion of which was for wages due as clerk, he not having drawn his salary but having left it in the hands of Wallerstein, drawing only such amount as was necessary to meet his personal expenditures. Upon these issues the case went to trial and a judgment was rendered for respondent Cohen in the sum of $3,152.43.

Only one error is assigned by the appellant upon which a reversal is demanded, and that is the misconduct of the respondent's attorney. In the transcript of Cohen's testimony the following appears:

"On the 26th day of June, 1893, Mr. Wallerstein owed me $3,349 and some cents. It was for salary and money loaned, $887.50 was for money I had loaned him, and the balance was for salary. I loaned the money at different times.

*Question.* Well, give us the date at which you loaned the money and the amounts you loaned him each time. A. On February 23, 1893, $300; and on March 10th, $127.50; April 24th, $60; April 17th, $325; and also $75 cash. I don't recollect the date.

"Q. Now, Mr. Cohen, what were those papers you referred to there just now? A. Those were checks; paid checks from the banks.

Q. Checks drawn in favor of Wallerstein? A. Yes, sir.

"(Attorney for plaintiff): I ask to have them marked for identification.

Whereupon four checks were fastened together and marked for identification 'Plff's Ident A,' but the same were not offered or received in evidence."

In the course of the argument to the jury by the plaintiff's counsel the following occurred:

"(Counsel): Now, gentlemen of the jury, as to the consideration for this bill of sale, Mr. Cohen has told

you that Mr. Wallerstein owed him $2,949, a part of which was for salary, and $887.50 for borrowed money. He tells you how he loaned this money to Wallerstein; when he loaned it, and how much he loaned him. Now, didn't he tell the truth about that?'

"Whereupon counsel holding in his hands a little package of checks that had been marked for identification during the examination of plaintiff . . . and holding the same in such manner that the jury could see they were checks, said:

"'Mr. Cohen tells you that on February 23, 1893, he loaned to Mr. Wallerstein $300.'

"Counsel for the defendant then interposed and said:

"'If the court please I object to counsel's method of arguing to the jury, and particularly to his exhibiting and reading to the jury papers not in evidence, and I now ask the court to instruct the jury that they shall disregard counsel's argument in regard to such papers that are not in evidence.'

"(Counsel for plaintiff) then said: 'I am not reading these papers to the jury.'

"The court then said to counsel: 'You are using the papers to refresh your recollection of dates and amounts?' Counsel said: 'Yes.'

"Mr. Sharpstein, (counsel for defendant) then said: 'These checks have not been offered in evidence.'

"(Counsel for plaintiff) then said: 'No, your Honor, these checks have not been offered in evidence; have only been marked for identification, but they were used by witness Cohen to refresh his recollection.'

"The court then said: 'I think counsel is getting close to the line, but I think nothing improper has been said by counsel, and I will give Mr. Sharpstein the benefit of an exception;' . . . and thereupon counsel for plaintiff continued his argument and did not read from said checks, but held the checks in his hand and referred to them for dates and amounts during a part of his address to the jury."

We think the counsel for the plaintiff should not

have been allowed by the court to pursue this character or manner of argument. It is a-b-c law that the verdict of the jury must be rendered upon the testimony, and only upon the testimony, admitted as evidence by the court in the trial of the cause. These checks, after having been identified by the witness, were not offered in evidence, presumably for the reason that they were not competent testimony. If they were competent testimony, and such testimony as the plaintiff deemed material for any purpose, they should have been introduced; not having been so introduced, they could not properly be brought to bear upon the jury for the purpose of affecting their judgment as to whether the claim of Cohen, that he had loaned money to Wallerstein, was a true claim or not. And evidently that was the object of counsel in referring to them and in exhibiting them to the jury. There could have been no other reason, for it would be a natural inference for the jury to draw that if a check in favor of Wallerstein, given by Cohen, had been presented at the bank and paid, the testimony of the witness in relation to that particular payment had been corroborated. The mind of the juror is more easily affected by tangible objects or material evidence than it is by abstract principles or evidence of an abstract nature, and while in this case it is true that the counsel did not read from the checks, yet it seems to us that the checks were brought to bear upon the minds of the jury just as forcibly as though they had been read from, from the fact that their attention was called to them when they were identified by the witness, and that they were then exhibited to them by counsel in arguing the proposition of respondent, even though it was done by reference to dates and amounts only, for the date and amount are

the essential things about a check. If it came to the knowledge of the jury that the checks had been given from Cohen to Wallerstein, and the dates and amounts of those checks were brought to their knowledge, for all practical purposes the checks were introduced in evidence, and as these checks were as a matter of fact not introduced in evidence, nothing concerning them should have been brought to the attention of the jury. A witness may be allowed to refer to a paper to refresh his memory as to dates, but this rule of law does not apply to an attorney in arguing a case.

The evidence in this case shows that it was a very close question of fact which was submitted to the jury, and it may have taken very little testimony to have turned the minds of the jury one way or the other; and we are not satisfied that the unwarranted exhibition of these checks did not furnish the quantum of testimony necessary to turn the minds of the jury in favor of the respondent.

Again, when a question of this kind, upon which there is any doubt, is brought, as it was in this case, to the attention of the court, and the court is asked to instruct the jury to disregard such testimony, it seems to us there is no reason why such instruction should not be given. No harm could have been done the respondent by the instruction asked by appellant's counsel, and under the circumstances we think that it was an instruction which the appellant's rights demanded.

For this error the judgment will be reversed and the cause remanded with instructions to grant a new trial.

Hoyt, C. J., and Scott, Anders and Gordon, JJ., concur.